UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DURINDA MEEKER, | )<br>) |
| Plaintiff, | ) Case No. C05-1713-JPD<br>) |
| v. | )<br>) |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ORDER<br>)<br>) |
| Defendant. | ) |

This case involves an appeal by plaintiff Durinda L. Meeker of a final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the decision is reversed and remanded for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-year-old woman with a ninth grade formal education, but has obtained a general equivalency diploma ("GED"). AR 68, 387. Her past work experience includes working as a certified nursing assistant at a nursing home, a customer service representative, and a member of a kitchen crew and assistant manager at a fast-food restaurant. AR 63. Plaintiff has a past history of drug and alcohol abuse, but has gone through rehabilitation and asserts that she no longer has a substance-abuse problem. AR 393.

REPORT AND RECOMMENDATION
PAGE -1

Plaintiff lives with her parents part of the time and with her boyfriend at other times. AR 395. She depends on her parents and her boyfriend for everyday household tasks and care for her daughter. *Id.*, AR 415. She receives some public assistant benefits.[1] AR 409.

On October 19, 2001, plaintiff applied for SSI, and claimed that disability began on October 1, 1999. AR 56-58. Plaintiff alleged a mental disability and hepatitis C that often made her ill and limited her ability to interact with people other than her immediate family and boyfriend. AR 62. Plaintiff was denied benefits initially and upon reconsideration by the Social Security Administration. AR 28, 37. On August 6, 2003, a hearing was held before the ALJ, where the ALJ concluded that plaintiff was not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work. AR 305-14. Plaintiff appealed the ALJ's decision, and the Appeals Council found that the ALJ erred, because his findings were inconsistent with the medical evidence, his decision lacked evaluation of certain examining source opinions, and his analysis of plaintiff's ability to perform past relevant work was not supported by the record. AR 344-47. Accordingly, the case was remanded to the ALJ. *Id.*

On December 13, 2004, a second hearing was held before the ALJ. His decision on February 5, 2005, denied plaintiff SSI benefits, finding that plaintiff was able to perform certain jobs that existed in the national economy. AR 17-25. Plaintiff again appealed to the Appeals Council, but review was denied on August 31, 2005. AR 8. The ALJ's decision became the final decision of the Commissioner. *Id.*

On October 11, 2005, plaintiff timely filed this action to challenge the ALJ's decision. Dkt. No. 1. This matter is before the undersigned United States Magistrate Judge on consent, pursuant to 28 U.S.C. § 636. Dkt. No.11, Attach. 1.

---

[1] Plaintiff reported receiving public-assistant benefits at the time of her SSI application. AR 57. At the first hearing, plaintiff stated that she did not receive any benefits, but at her second hearing, plaintiff testified that she received food-stamp benefits. AR 390, 409.

REPORT AND RECOMMENDATION
PAGE -2

## II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

## III. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Meeker bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.

*See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential-evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes that she has not engaged in any substantial gainful activity, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically-severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

REPORT AND RECOMMENDATION
PAGE -4

## V.  DECISION BELOW

On January 26, 2005, the ALJ issued a decision finding:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's affective disorder, personality disorder and chronic liver disease with cirrhosis are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds that the claimant's allegation regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the following residual functional capacity: the claimant could lift fifty pounds occasionally and twenty-five pounds frequently. She could stand six hours in an eight-hour day. She retains the mental ability to understand, remember and carry out simple instructions; make simple work-related decisions necessary to function in unskilled work; respond appropriately to supervisor; and work in usual work situation where the setting is predictable and the work is well defined and routing not dealing with the general public.

6. The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

7. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

8. The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).

9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. (20 CFR § 416.968).

10. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967).

11. Although the claimant's exertional limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 203.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such work include work as laundry worker for which there are 4,600 jobs in the state of Washington and 240,000 jobs nationally; bakery line worker for which there are 1,300 jobs in Washington and

|     |                                                                                                                                                                                        |
| --- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     | 69,000 nationally; and small parts assembler for which there are 6,600 jobs nationally and 341,000 nationally.                                                                         |
| 12. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR § 416.920(g)).                                |

AR 24-25.

## VI.  ISSUES ON APPEAL

Plaintiff raises two issues in her appeal:

1. Did the ALJ Properly Evaluate the Medical Evidence? and

2. Did the ALJ Err by Ignoring Testimony from the Vocational Expert?

## VII.  DISCUSSION

A. <u>The ALJ Erred in Evaluating Plaintiff's Credibility.</u>

According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective-symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p (1996). First, the ALJ must determine whether there is a medically-determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-2; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must identify specifically the testimony that is not credible and the evidence that undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for

REPORT AND RECOMMENDATION
PAGE -6

truthfulness, inconsistencies in testimony, or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light*, 119 F.3d at 792. Yet, because a claimant need not present clinical or diagnostic evidence to support the severity of pain, a finding that the claimant lacks credibility cannot be premised solely on a lack of medical support for the severity of pain. *Id*.

The ALJ erred in evaluating plaintiff's testimony. The ALJ cited inconsistencies about driving, drinking, a relationship with a roommate, and work status to justify a negative credibility determination. AR 20-22. Because the ALJ found the plaintiff to be non-credible, he rejected medical opinions that relied on statements made by plaintiff.

The ALJ erred in his evaluation of the testimony relating to these alleged inconsistencies. Plaintiff reported to Dr. Jarvis that she had severe anxiety about leaving home, AR 129, yet a daily activities questionnaire prepared by plaintiff's mother and roommate in November of 2001, indicated that there were times plaintiff would leave home and drive whenever she chose. AR 84, 89. A later questionnaire prepared by plaintiff's mother and boyfriend in April of 2002, noted that plaintiff did not drive any longer. AR 118, 123. Although these statements could be construed as a worsening of the plaintiff's condition over time, the ALJ chose to reject them as inconsistent, and not supported by explanations. AR 21.

An ALJ has a duty to develop the record when there are ambiguities in the record. 20 C.F.R. § 416.912(e); s*ee also* SSR 96-5p. Even though he asked questions about driving during the hearing, he failed to develop the record completely. During the December 2004 hearing, the ALJ questioned plaintiff about her driving habits. AR 416. Plaintiff testified that

REPORT AND RECOMMENDATION
PAGE -7

01 she did not drive, that driving made her nervous, that she was involved in a motor accident the
02 last time she drove, and that she did not own a car. *Id*. He failed to ask about the earlier
03 statement, which he subsequently used to provide the basis of the alleged inconsistency.
04 Consequently, he failed to develop the record fully.

05       The ALJ also stated that plaintiff was dishonest about her substance abuse to Dr.
06 Jarvis. AR 21-22. On February 1, 2001, plaintiff told Dr. Jarvis that "[she] stopped drinking
07 a couple of years ago[,]" AR 131, but the ALJ noted that there was evidence in the record that
08 she drank in August, 200 [sic]. AR 22. On March 12, 2002, plaintiff reported that she had
09 not had alcohol since October 27, 2000. AR 282. It appears that plaintiff last consumed
10 alcohol about three months prior to the evaluation by Dr. Jarvis. A failure to convey a one-
11 time relapse is insufficient to discredit plaintiff's testimony. At most, the record is ambiguous
12 on plaintiff's alcohol use. The evidence relied upon by the ALJ to discredit plaintiff falls short
13 of the "clear and convincing evidence" requirement.

14       The ALJ also concluded that plaintiff was not honest in disclosing her relationship with
15 a male roommate. AR 22. On March 12, 2002, plaintiff told Dr. Parker that she lived part-
16 time with a male roommate and that the relationship was not intimate. AR 281. At the time,
17 plaintiff "did not get along" with her roommate and wanted to move out. AR. 281. Because
18 her "roommate" is also referred to as her "boyfriend" in other parts of the record, the ALJ
19 concluded that plaintiff was dishonest to Dr. Parker in describing their relationship. AR 22,
20 390, 415. However, approximately six months earlier, on September 4, 2001, plaintiff
21 communicated to Dr. Parker that she lived with a boyfriend. AR 290. Further, even her
22 "roommate" described himself in the daily activities questionnaire as a "friend." AR 86, 120.
23 The terms "friend," " roommate," and  "boyfriend" appear to be used interchangeably in the
24 record. Evidence does not support the ALJ's conclusion that plaintiff was not truthful with
25 her doctor about her relationship with her "roommate."

26

REPORT AND RECOMMENDATION
PAGE -8

01       Finally, the ALJ uses plaintiff's work status in 2002 to discredit plaintiff's testimony.
02 AR 21. The ALJ determined that because plaintiff worked in 2002 for Ticketmaster, her
03 social functioning abilities were greater than what she conveyed. AR 20. However, the
04 record viewed in its entirety indicates that plaintiff did not work in 2002. The Disability
05 Report (AR 63) shows plaintiff last worked in 1999, and plaintiff testified at the first hearing
06 that the 2002 income was fraudulently reported.[2] AR 388-89. At the second hearing, plaintiff
07 initially stated that she worked for TicketMaster in 2002, but clarified that the work actually
08 occurred in 1999 when questioned by her counsel. AR 411. The ALJ erred in his findings
09 about plaintiff's employment history.

10       B.    The ALJ Erred in His Evaluation of the Medical Evidence.

11       Plaintiff asserts that the ALJ failed to give proper weight to the opinions of examining
12 physicians, and rejected the opinions without a legitimate basis. Dkt. No. 12 at 5. The ALJ
13 rejected Dr. Parker's medical opinions because there was little objective evidence on which to
14 base the evaluation, and instead relied extensively on plaintiff's report of complaints. Because
15 he rejected the plaintiff's credibility, the ALJ also rejected Dr. Parker's medical opinions
16 without further analysis. The ALJ specifically cited the plaintiff's alleged employment in 2002,
17 and the "roommate" "boyfriend" distinction discussed above to reject Dr. Parker's testimony.
18 In addition, the ALJ rejected Dr. Jarvis' testimony that the plaintiff suffered from an anxiety
19 disorder based, in part, on plaintiff's improperly discredited report of symptoms. AR 21. As
20 discussed above, the ALJ erred in his adverse credibility determination, which means that the
21 reasons offered for his rejection of the medical opinions of Drs. Parker and Jarvis do not meet
22 the standard set forth in *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (The

---

[2] Plaintiff testified that an income of approximately $6,650 was reported in her annual income-tax return in order to claim certain income credits, and to receive an income-tax return of $500, which she was not entitled to receive. AR 387-89.

REPORT AND RECOMMENDATION
PAGE -9

opinions of treating physicians are to be given great consideration, particularly when they relate to medical areas within their area of specialization.).

Finally, mental-health counselor Laura Brunt evaluated plaintiff and assigned her a Global Assessment of Functioning ("GAF") score of 45. AR 140. Brunt diagnosed plaintiff with "major depressive disorder, polysubstance dependence - in early full remission, and personality disorder." AR 294. She opined that plaintiff has marked limitations in her "ability to perform routine tasks" and her "ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting." AR 295. Although Brunt's opinion is not an "acceptable medical source," because she is not a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or a qualified speech language pathologist, 20 C.F.R. §§ 404.1513 (a), 416.913 (a), an ALJ can consider lay witness sources in order to determine whether a plaintiff has an impairment. 20 C.F.R. §§ 404.1513 (d)(4). The Social Security Regulations state that GAF scores do "not have a direct correlation to the severity requirements in . . . mental disorder listings." 65 Fed. Reg. 50746, 50764-65. However, GAF scores have been considered in determining impairments. *See Schneider v. Commissioner of Social Security Admin*istration, 223 F.3d 968, 973-74 (9th Cir. 2000). The ALJ must provide reasons germane to each witness in order to discount a lay witness testimony, *Dodrill*, 12 F.3d at 919. On remand, the ALJ is instructed to consider Ms. Brunt's evidence or provide appropriate reasons for not doing so.

C. <u>The ALJ Shall Further Develop Plaintiff's Medical Evidence Relating to Her Impairments.</u>

The ALJ failed in his "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted). This duty "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." 20 C.F.R. § 416.912(e); s*ee also* SSR 96-5p; *Thomas*, 278 F.3d at 958.

Here, the latest medical evidence pertaining to plaintiff's alleged disability is approximately four years old.[3] The ALJ is directed to develop the record further in order to make an accurate determination of plaintiff's disability, and make a new assessment of plaintiff's residual functional capacity.

### D. The ALJ Shall Obtain New Vocational Expert Testimony After Reevaluation of Plaintiff's Residual Functional Capacity.

Plaintiff alleges that the ALJ erred in evaluation of vocational expert ("VE") testimony, because the ALJ did not consider the hypothetical presented by plaintiff's counsel. At step five, if a VE is used, then the ALJ must provide the VE with an accurate and detailed description of all the claimant's physical and mental limitations that are supported by the record. *Thomas* 278 F. 3d. at 956; *Tackett*, 180 F.3d at 1101. A hypothetical that fairly can be said to incorporate plaintiff's functional limitations satisfies this requirement. *Thomas*, 278 F.3d at 956.

The ALJ failed to do so, because he erred in rejecting certain medical evidence. The ALJ is instructed to make a new RFC assessment and obtain new VE testimony regarding plaintiff's ability to work.

## VIII. CONCLUSION

Because the ALJ erred in his evaluation of medical evidence, the Court orders a reversal and remand for further proceedings. On remand, the ALJ shall reevaluate all medical evidence and further develop the medical record given the lack of recent medical evidence in the record. In addition, the ALJ shall consider mental-health counselor Laura Brunt's opinion specifically relating to Global Assessment of Functioning ("GAF") scores, in determining

---

[3] Mental-health counselor Brunt's opinion is from March of 2001. AR 293-96. Dr. Jarvis' opinion is from February of 2001. AR 129-33. Dr. Parker's opinion is from March of 2002. AR 276-79. Both mental and physical RFC accounts are from April 2002. AR 196-99, 213-17.

Residual Functional Capacity ("RFC"). Finally, the ALJ shall obtain Vocational Expert testimony based on reassessment of plaintiff's RFC.

The final decision of the Commissioner is reversed and remanded for further proceedings not inconsistent with this Order.

DATED this 8th day of June, 2006.

/s/ James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge